COPY

1  Joseph R. Re (SBN 134,479)
   joseph.re@kmob.com
2  Jon W. Gurka (SBN 187,964)
   jon.gurka@kmbo.com
3  Joseph S. Cianfrani (SBN 196,186)
   joseph.cianfrani@kmob.com
4  Irfan A. Lateef (SBN 204,004)
   irfan.lateef@kmob.com
5  Jonathan I. Detrixhe (SBN 258,946)
   jonathan.detrixhe@kmob.com
6  Ghazaly Imam (SBN 262,467)
   ghazaly.imam@kmob.com
7  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, 14th Floor
8  Irvine, CA 92614
   Telephone: (949) 760-0404
9  Facsimile:  (949) 760-9502

10 Reza Mirzaie (SBN 246,953)
   reza.mirzaie@kmob.com
11 **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   1901 Avenue of the Stars, Suite 1500
12 Los Angeles, CA 90067
   Telephone:  (310) 551-3450
13 Facsimile:  (310) 551-3458

14 Attorneys for Plaintiffs TOSHIBA CORPORATION

15          IN THE UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18 TOSHIBA CORPORATION,                    )  Civil Action No.
                                           )
19          Plaintiff,                     )  **SACV10-00074    RNB**
                                           )
20     v.                                  )
                                           )
21 WISTRON CORPORATION;                    )  **COMPLAINT FOR PATENT**
   WISTRON INFOCOMM (TEXAS)                )  **INFRINGEMENT AND**
22 CORPORATION; and WISTRON                )  **DECLARATORY JUDGMENT**
   INFOCOMM TECHNOLOGY                     )
23 (AMERICA) CORPORATION,                  )  **DEMAND FOR JURY TRIAL**
                                           )
24          Defendants.                    )
                                           )
25

26

27

28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2010 JAN 19  AM 11:01
BY:
FILED

This is an action brought by Plaintiff Toshiba Corporation ("Toshiba") for patent infringement and for declaratory judgment against Defendants Wistron Corporation ("Wistron Corp."), Wistron InfoComm (Texas) Corporation ("WTX"), and Wistron InfoComm Technology (America) Corporation ("WITX") (collectively "Defendants" or "Wistron").

## I. **THE PARTIES**

1.      Plaintiff Toshiba Corporation is a corporation organized under the laws of Japan, with a principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.

2.      Toshiba Corporation has an indirect subsidiary in this district – Toshiba America Information Systems, Inc. ("TAIS"). TAIS is located at 9740 Irvine Blvd., Irvine, CA 92718-1697. TAIS conducts significant business activities in this judicial district and other judicial districts in the United States. In particular, TAIS sells Toshiba's notebook computer products in the United States.

3.      Moreover, to fully support its products and customers, TAIS provides, in this judicial district and other judicial districts, customer support, technical service, repair and replacement of parts, and engineering support relating to its notebook computer products.

4.      Upon information and belief, Defendant Wistron Corporation is a Taiwanese corporation having a principal place of business at 21F, 88, Sec. 1, Hsin Tai Wu Road., Hsichih, Taipei Hsien 221, Taiwan, R.O.C. Upon further information and belief, Defendant Wistron Corporation is conducting business in the state of California and this judicial district.

5.      Upon information and belief, Defendant Wistron InfoComm (Texas) Corporation is a corporation organized and existing under the laws of the state of Texas, having a principal place of business at 4051 Freeport Parkway, Suite 200, Grapevine, TX 76051. Upon further information and

1   belief, Defendant Wistron InfoComm Technology (Texas) Corporation is
2   conducting business in the state of California and this judicial district.

3         6.      Upon information and belief, Defendant Wistron InfoComm
4   Technology (America) Corporation is a corporation organized and existing
5   under the laws of the state of Texas, having a principal place of business at 800
6   Parker Square, Suite 285A, Flower Mount, TX 75028.   Upon further
7   information and belief, Defendant Wistron InfoComm Technology (America)
8   Corporation is conducting business in the state of California and this judicial
9   district.

10   ## II.  JURISDICTION AND VENUE

11         7.      This action arises under the Patent Laws of the United States, 35
12   U.S.C. §§ 100, *et seq.*

13         8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §
14   1331, 28 U.S.C. §§ 1338(a), and pursuant to the Declaratory Judgment Act, 28
15   U.S.C. §§ 2201-02.

16         9.      Defendants are subject to the personal jurisdiction of this Court.

17         10.      Venue is proper in this Judicial District pursuant to 28 U.S.C.
18   § 1391(b), (c) and 1400(b).

19   ## III.  CLAIMS FOR PATENT INFRINGEMENT

20   ### FIRST CLAIM FOR RELIEF

21   **(Infringement of U.S. Patent No. 7,156,693)**

22         11.      Toshiba incorporates by reference and realleges each of the
23   allegations set forth in Paragraphs 1-10 above.

24         12.      On January 2, 2007, U.S. Patent No. 7,156,693 ("the '693 patent"),
25   entitled "Electronic Apparatus With Pointing Device on the Housing" was duly
26   and legally issued by the United States Patent and Trademark Office.  Toshiba
27   owns the patent by assignment.  A copy of the '693 patent is attached hereto as
28   Exhibit 1.

13.     Upon information and belief, Defendants have in the past and are currently infringing the '693 patent by making, using, selling, importing and/or offering to sell notebook computer products covered by one or more claims of the '693 patent in violation of 35 U.S.C. § 271.

14.     Upon information and belief, Defendants have actively induced others to infringe the '693 patent. Defendants' acts constitute infringement of the '693 patent in violation of 35 U.S.C. § 271(b).

15.     Upon information and belief, Defendants have contributorily infringed the '693 patent. Defendants' acts constitute infringement of the '693 patent in violation of 35 U.S.C. § 271(c).

16.     Defendants' acts of infringement have caused damage to Toshiba in an amount to be determined at trial.

17.     Defendants' infringement of the '693 patent is causing irreparable harm to Toshiba, for which there is no adequate remedy at law. Defendants' infringement will continue, and will continue to cause irreparable harm to Toshiba, unless Defendants' infringement is enjoined by this Court.

18.     Toshiba is informed and believes that Defendants' infringement of the '693 patent was and is willful and deliberate, entitling Toshiba to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 5,430,867)

19.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-10 above.

20.     On July 4, 1995, U.S. Patent No. 5,430,867 ("the '867 patent"), entitled "Data Processing System Having a Resume Function and an Operating Method Thereof" was duly and legally issued by the United States Patent and Trademark Office. Toshiba owns the patent by assignment. A copy of the '867

patent is attached hereto as Exhibit 2.

21.　　Upon information and belief, Defendants have in the past and are currently infringing the '867 patent by making, using, selling, importing and/or offering to sell notebook computer products  covered by one or more claims of the '867 patent in violation of 35 U.S.C. § 271.

22.　　Upon information and belief, Defendants have actively induced others to infringe the '867 patent.  Defendants' acts constitute infringement of the '867 patent in violation of 35 U.S.C. § 271(b).

23.　　Upon information and belief, Defendants have contributorily infringed the '867 patent.  Defendants' acts constitute infringement of the '867 patent in violation of 35 U.S.C. § 271(c).

24.　　Defendants' acts of infringement have caused damage to Toshiba in an amount to be determined at trial.

25.　　Defendants' infringement of the '867 patent is causing irreparable harm to Toshiba, for which there is no adequate remedy at law.  Defendants' infringement will continue, and will continue to cause irreparable harm to Toshiba, unless Defendants' infringement is enjoined by this Court.

26.　　Toshiba is informed and believes that Defendants' infringement of the '867 patent was and is willful and deliberate, entitling Toshiba to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under 35 U.S.C. § 285.

## THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 6,230,209)

27.　　Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-10 above.

28.　　On May 8, 2001, U.S. Patent No. 6,230,209 ("the '209 patent"), entitled "Multimedia Computer System" was duly and legally issued by the United States Patent and Trademark Office.  Toshiba owns the patent by

-4-

1  assignment.  A copy of the '209 patent is attached hereto as Exhibit 3.

2      29.     Upon information and belief, Defendants have in the past and are

3  currently infringing the '209 patent by making, using, selling, importing and/or

4  offering to sell notebook computer products  covered by one or more claims of

5  the '209 patent in violation of 35 U.S.C. § 271.

6      30.     Upon information and belief, Defendants have actively induced

7  others to infringe the '209 patent.  Defendants' acts constitute infringement of

8  the '209 patent in violation of 35 U.S.C. § 271(b).

9      31.     Upon information and belief, Defendants have contributorily

10  infringed the '209 patent.  Defendants' acts constitute infringement of the '209

11  patent in violation of 35 U.S.C. § 271(c).

12      32.     Defendants' acts of infringement have caused damage to Toshiba

13  in an amount to be determined at trial.

14      33.     Defendants' infringement of the '209 patent is causing irreparable

15  harm to Toshiba, for which there is no adequate remedy at law.  Defendants'

16  infringement will continue, and will continue to cause irreparable harm to

17  Toshiba, unless Defendants' infringement is enjoined by this Court.

18      34.     Toshiba is informed and believes that Defendants' infringement of

19  the '209 patent was and is willful and deliberate, entitling Toshiba to enhanced

20  damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under

21  35 U.S.C. § 285.

## FOURTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 5,433,620)

24      35.     Toshiba incorporates by reference and realleges each of the

25  allegations set forth in Paragraphs 1-10 above.

26      36.     On July 18, 1995, U.S. Patent No. 5,433,620 ("the '620 patent"),

27  entitled "Portable Apparatus Having Cable Electrically Connecting Display Unit

28  and Base Unit" was duly and legally issued by the United States Patent and

Trademark Office.  Toshiba owns the patent by assignment.  A copy of the '620 patent is attached hereto as Exhibit 4.

37.     Upon information and belief, Defendants have in the past and are currently infringing the '620 patent by making, using, selling, importing and/or offering to sell notebook computer products  covered by one or more claims of the '620 patent in violation of 35 U.S.C. § 271.

38.     Upon information and belief, Defendants have actively induced others to infringe the '620 patent.  Defendants' acts constitute infringement of the '620 patent in violation of 35 U.S.C. § 271(b).

39.     Upon information and belief, Defendants have contributorily infringed the '620 patent.  Defendants' acts constitute infringement of the '620 patent in violation of 35 U.S.C. § 271(c).

40.     Defendants' acts of infringement have caused damage to Toshiba in an amount to be determined at trial.

41.     Defendants' infringement of the '620 patent is causing irreparable harm to Toshiba, for which there is no adequate remedy at law.  Defendants' infringement will continue, and will continue to cause irreparable harm to Toshiba, unless Defendants' infringement is enjoined by this Court.

42.     Toshiba is informed and believes that Defendants' infringement of the '620 patent was and is willful and deliberate, entitling Toshiba to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and non-taxable costs under 35 U.S.C. § 285.

## IV.  CLAIMS FOR DECLARATORY JUDGMENT
## GENERAL ALLEGATIONS

43.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-10 above.

44.     Wistron Corporation purports to own rights in U.S. Patent No. 5,870,613 ("the '613 patent") entitled "Power Management System for a

Computer." A copy of the '613 patent is attached as Exhibit 5.

45.    Wistron Corporation also purports to own rights in U.S. Patent No. 5,903,765 ("the '765 patent") entitled "Power Management System for a Computer." A copy of the '765 patent is attached as Exhibit 6.

46.    Wistron Corporation also purports to own rights in U.S. Patent No. 6,255,802 ("the '802 patent") entitled "Apparatus and Method of Controlling Battery Charging With Variable Current." A copy of the '802 patent is attached as Exhibit 7.

47.    Wistron Corporation also purports to own rights in U.S. Patent No. 6,711,004 ("the '004 patent") entitled "Portable Electronic Apparatus for Selectively Operating in Normal Mode and Tablet Mode." A copy of the '004 patent is attached as Exhibit 8.

## ACTUAL CONTROVERSY

48.    Toshiba and Wistron have been involved in negotiations regarding their intellectual property for at least the past year.

49.    During those negotiations, Wistron has accused Toshiba's notebook computer products of infringing the '613, '765, '802 and '004 patents. Toshiba denies these allegations.

50.    Wistron's accusations of infringement indicate Wistron's belief that Toshiba cannot lawfully sell its notebook computer products in the United States.

51.    Accordingly, Wistron's allegations of infringement have created a cloud over Toshiba and its products.

52.    Thus, there exists an actual controversy between Toshiba and Wistron concerning the alleged infringement of the Wistron patents by Toshiba's products.

///

///

## CLAIMS FOR RELIEF

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement of U.S. Patent 5,870,613)

53.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

54.     Toshiba has not and does not infringe any valid claims of the '613 patent.

55.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '613 patent, and it should declare that Toshiba has not and does not infringe the claims of the '613 patent.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent 5,870,613)

56.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

57.     Wistron's allegations of infringement of the '613 patent are based in part upon the presumption that the '613 patent is valid.

58.     The claims of the '613 patent are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including, without limitation, those specified in §§ 102, 103, and 112.

59.     Accordingly, an actual case or controversy exists between Toshiba and Wistron regarding the validity of the claims of the '613 patent.

60.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '613 patent, and it should declare the claims of the '613 patent invalid.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement of U.S. Patent 5,903,765)

61.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

62.     Toshiba has not and does not infringe any valid claims of the '765 patent.

63.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '765 patent, and it should declare that Toshiba has not and does not infringe the claims of the '765 patent.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent 5,903,765)

64.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

65.     Wistron's allegations of infringement of the '765 patent are based in part upon the presumption that the '765 patent is valid.

66.     The claims of the '765 patent are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including, without limitation, those specified in §§ 102, 103, and 112.

67.     Accordingly, an actual case or controversy exists between Toshiba and Wistron regarding the validity of the claims of the '765 patent.

68.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '765 patent, and it should declare the claims of the '613 patent invalid.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement of U.S. Patent 6,255,802)

69.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

70.     Toshiba has not and does not infringe any valid claims of the '802 patent.

71.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '802 patent, and it should declare that Toshiba has not and does not infringe the claims of the '802 patent.

## TENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent 6,255,802)

72.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

73.     Wistron's allegations of infringement of the '802 patent are based in part upon the presumption that the '802 patent is valid.

74.     The claims of the '802 patent are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including, without limitation, those specified in §§ 102, 103, and 112.

75.     Accordingly, an actual case or controversy exists between Toshiba and Wistron regarding the validity of the claims of the '802 patent.

76.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '802 patent, and it should declare the claims of the '802 patent invalid.

## ELEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement of U.S. Patent 6,711,004)

77.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

78.     Toshiba has not and does not infringe any valid claims of the '004 patent.

79.     Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '004 patent, and it should declare that Toshiba has not and does not infringe the claims of the '004 patent.

## TWELFTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity of U.S. Patent 6,711,004)

80.     Toshiba incorporates by reference and realleges each of the allegations set forth in Paragraphs 43-52 above.

/ / /

81.    Wistron's allegations of infringement of the '004 patent are based in part upon the presumption that the '004 patent is valid.

82.    The claims of the '004 patent are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including, without limitation, those specified in §§ 102, 103, and 112.

83.    Accordingly, an actual case or controversy exists between Toshiba and Wistron regarding the validity of the claims of the '004 patent.

84.    Toshiba respectfully submits that this Court should declare the rights of Toshiba and Wistron with respect to the '004 patent, and it should declare the claims of the '004 patent invalid.

## PRAYER FOR RELIEF

WHEREFORE, Toshiba prays for judgment and seeks relief as follows:

A.    A judgment that Defendants have infringed the '693 patent;

B.    A judgment that Defendants have infringed the '867 patent;

C.    A judgment that Defendants have infringed the '209 patent;

D.    A judgment that Defendants have infringed the '620 patent;

E.    A permanent injunction against further infringement of the '693, '867, '209 and '620 patents, including injunctions against direct infringement, contributory infringement, and induced infringement;

F.    An award of damages for Defendants' infringement of the '693, '867, '209 and '620 patents;

G.    A trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

H.    A declaration that Defendants' infringement of the '693, '867, '209 and '620 patents was and is willful, and that this is an exceptional case under 35 U.S.C. § 285;

I.    An award of attorneys' fees and non-taxable costs under 35 U.S.C. § 285 on account of Defendants' willful infringement;

1    J.    A Declaratory Judgment that Toshiba has not, and does not,

2   infringe the '613 patent;

3    K.    A Declaratory Judgment that the '613 patent is invalid;

4    L.    A Declaratory Judgment that Toshiba has not, and does not,

5   infringe the '765 patent;

6    M.    A Declaratory Judgment that the '765 patent is invalid;

7    N.    A Declaratory Judgment that Toshiba has not, and does not,

8   infringe the '802 patent;

9    O.    A Declaratory Judgment that the '802 patent is invalid;

10    P.    A Declaratory Judgment that Toshiba has not, and does not,

11   infringe the '004 patent;

12    Q.    A Declaratory Judgment that the '004 patent is invalid;

13    R.    An award of taxable costs; and

14    S.    Such other and further relief as this Court may deem just and

15   proper.

16                     Respectfully submitted,

17                     KNOBBE, MARTENS, OLSON & BEAR, LLP

18

19   Dated: Jan. 19, 2010     By: _____

20                             Joseph R. Re
                               Jon W. Gurka
21                             Joseph S. Cianfrani
                               Irfan A. Lateef
22                             Reza Mirzaie
                               Jonathan I. Detrixhe
23                             Ghazaly Imam
                               Attorneys for Plaintiff
24                             TOSHIBA CORPORATION

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Toshiba Corporation demands a trial by jury of all issues raised by the pleadings which are triable by jury.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: Jan. 19, 2010    By: _____

Joseph R. Re
Jon W. Gurka
Joseph S. Cianfrani
Irfan A. Lateef
Reza Mirzaie
Jonathan I. Detrixhe
Ghazaly Imam
Attorneys for Plaintiff
TOSHIBA CORPORATION

8251366

-13-



US007156693B2

(12) **United States Patent**

Kusaka

(10) Patent No.: **US 7,156,693 B2**

(45) Date of Patent: **Jan. 2, 2007**

(54) **ELECTRONIC APPARATUS WITH POINTING DEVICE ON THE HOUSING**

(75) Inventor: **Hiroyuki Kusaka**, Tokyo (JP)

(73) Assignee: **Kabushiki Kaisha Toshiba**, Tokyo (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/635,631**

(22) Filed: **Aug. 5, 2003**

(65) **Prior Publication Data**

US 2004/0142593 A1    Jul. 22, 2004

(30) **Foreign Application Priority Data**

Jan. 22, 2003    (JP)    .......................... P2003-013377

(51) **Int. Cl.**
*H01R 3/00*    (2006.01)

(52) **U.S. Cl.** ...................................... **439/488**; 345/173

(58) **Field of Classification Search** ............... 439/488; 345/167, 905, 156–157, 163, 160, 173–178; 361/740, 687, 683

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,973,622 A * | 10/1999 | Chiang | 341/22 |
| 6,177,924 B1 | 1/2001 | Bae | |
| 6,219,038 B1 | 4/2001 | Cho | |
| 6,377,456 B1* | 4/2002 | Mohi et al. | 361/687 |
| 6,392,877 B1* | 5/2002 | Iredale | 361/683 |
| 6,587,231 B1* | 7/2003 | Sung | 358/497 |

| | | | |
|---|---|---|---|
| 6,670,950 B1* | 12/2003 | Chin et al. | 345/173 |
| 6,674,425 B1* | 1/2004 | Louis et al. | 345/173 |
| 6,700,692 B1* | 3/2004 | Tonar et al. | 359/265 |
| 6,798,882 B1* | 9/2004 | Kupiainen | 379/433.04 |
| 6,824,321 B1* | 11/2004 | Ward et al. | 400/479 |
| 6,839,430 B1* | 1/2005 | Kwak | 379/433.01 |
| 6,904,300 B1* | 6/2005 | Maattanen et al. | 455/575.1 |
| 2002/0054115 A1* | 5/2002 | Mack et al. | 345/765 |
| 2005/0057526 A1* | 3/2005 | Kinoshita et al. | 345/173 |
| 2005/0146516 A1* | 7/2005 | Nishiyama | 345/176 |
| 2005/0259069 A1* | 11/2005 | Baker et al. | 345/156 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 987 649 | 3/2000 |
| JP | 11-212665 | 8/1999 |
| JP | 2002-149338 | 5/2002 |
| JP | 2002-297309 | 10/2002 |
| JP | 2002-329978 | 11/2002 |

OTHER PUBLICATIONS

European Search Report as issued in European Application No. 03017302, Mailing date Apr. 18, 2006.

* cited by examiner

*Primary Examiner*—Tulsidas C. Patel
*Assistant Examiner*—Phuongchi Nguyen
(74) *Attorney, Agent, or Firm*—Foley & Lardner LLP

(57)    **ABSTRACT**

An electronic apparatus has a housing and a pointing device. The housing has an outside wall that includes an outer surface exposed outward of said housing, and an operation area in the outer surface. The pointing device has a flat input surface laid on the inner surface of the operation area, and the flat input surface receives input operations through the operation area.

**22 Claims, 6 Drawing Sheets**



EXHIBIT 1 Page 1 of 13



F I G. 1

EXHIBIT 1 Page 2 of 13



FIG. 2

EXHIBIT 1 Page 3 of 13



EXHIBIT 1 Page 4 of 13



F I G. 8



F I G. 9



F I G. 10



F I G. 11

EXHIBIT 1 Page 5 of 13



FIG.12



FIG.13



FIG.14



FIG.15

EXHIBIT 1 Page 6 of 13



F I G. 16



F I G. 17

EXHIBIT 1 Page 7 of 13

US 7,156,693 B2

**1**

## ELECTRONIC APPARATUS WITH POINTING DEVICE ON THE HOUSING

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is based upon and claims the benefit of priority from Japanese Patent Application No. 2003-13377, filed Jan. 22, 2003, the entire contents of which are incorporated herein by reference.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to an electronic apparatus, such as a portable computer, which includes a pointing device having a flat input surface.

2. Description of the Related Art

Among known electronic apparatuses, such as portable computers, is a type that has a housing and an input device. The housing includes an upper housing half and a lower housing half. The upper housing half incorporates the input device. The input device has a flat input surface. The input device may be one that inputs information by using a sheet that can detect electrostatic capacity. Alternatively, it may be one that inputs information by using a pressure sensitive film that can detect pressure.

Japanese Patent Application Publication (KOKAI) No. 11-212665 discloses an electronic apparatus that has a main body and an input unit arranged therein. The housing of the main unit has an opening in the top wall. The input device is provided in the main unit, with its input surface opposing the opening. In this structure, the input surface is contacted directly. Therefore, the input device may be likely to get scratches, and/or damages.

Japanese Patent Application Publication (KOKAI) No. 2002-329978 discloses an electronic apparatus that has a housing and an input unit arranged therein. The housing includes an upper housing half and a lower housing half. The upper housing half has an opening in the top wall. The upper housing half has an opening in the top wall. The input device is provided in the upper housing half, with its input surface opposing the opening. A protection sheet and a support member are provided in the upper housing half, too. The protection sheet lies between the top wall and the input surface of the input device. More precisely, the sheet is laid on the inner surface of the top wall, closing the opening of the upper housing half and protecting the input surface against any access of the user's fingers. The input device is interposed between the protection sheet and the support member. The support member that is shaped like a frame secures the input device to the upper housing half. The lower housing half combines with the upper housing half, concealing the input device within the housing.

A manufacturer, however, needs to perform many steps to assemble the electronic apparatus disclosed in this reference. First, an opening is made in the upper housing half. Next, the protecting sheet is secured to the inner surface of the top wall of the upper housing half, to close the opening. Then, the input device and the support member are arranged in the upper housing half such that the support member secures the input device to the upper housing half. Finally, the lower housing half is fastened to the upper housing half, thereby concealing the input device within the housing. Thus, it takes much time labor to assemble the electronic apparatus disclosed in the reference.

**2**

### BRIEF SUMMARY OF THE INVENTION

Embodiments of the present invention provide an electronic apparatus with a pointing device on the housing.

According to an embodiment of the present invention, an electronic apparatus has a housing and a pointing device. The housing has an outside wall which includes an outer surface exposed outward of said housing, and an operation area in the outer surface. The pointing device has a flat input surface laid on the inner surface of the operation area, and the flat input surface receives input operations through the operation area.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be obvious from the description, or may be learned by practice of the invention. The advantages of the invention may be realized and obtained by means of the instrumentalities and combinations particularly pointed out hereinafter.

### BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

The accompanying drawings, which are incorporated in and constitute a part of the specification, illustrate embodiments of the invention, and together with the general description given above and the detailed description of the embodiments given below, serve to explain the principles of the invention.

FIG. **1** is a perspective view showing a portable computer according to a first embodiment of the present invention;

FIG. **2** is a side view showing the portable computer in the first embodiment, with a housing partially cut away;

FIG. **3** is a sectional view showing a part close to an operation area of the portable computer in the first embodiment;

FIG. **4** is a sectional view showing a part close to an operational area of a portable computer according to a second embodiment of the present invention;

FIG. **5** is a sectional view showing a part close to an operational area of a portable computer according to a third embodiment of the present invention;

FIG. **6** is a sectional view showing a part close to an operational area of a portable computer according to a fourth embodiment of the present invention;

FIG. **7** is a sectional view showing a part close to an operational area of a portable computer according to a fifth embodiment of the present invention;

FIG. **8** is a sectional view showing a part close to an operational area of a portable computer according to a sixth embodiment of the present invention;

FIG. **9** is a perspective view showing a part close to an operation area of a portable computer according to a seventh embodiment of the present invention;

FIG. **10** is a sectional view showing the part close to the operational area in the seventh embodiment;

FIG. **11** is a magnified sectional view showing the area enclosed by the chain line X in FIG. **10** in the seventh embodiment;

FIG. **12** is a perspective view showing a part close to an operation area of a portable computer according to an eighth embodiment of the present invention;

FIG. **13** is a sectional view showing the part close to the operational area in the eighth embodiment;

FIG. **14** is a sectional view showing a part close to an operational area of a portable computer according to a ninth embodiment of the present invention;

EXHIBIT 1 Page 8 of 13

US 7,156,693 B2

**3**

FIG. **15** is a sectional view showing a part close to an operational area of a portable computer according to a tenth embodiment of the present invention;

FIG. **16** is a perspective view showing a part close to an operation area of a portable computer according to an eleventh embodiment of the present invention; and

FIG. **17** is a sectional view showing a part close to an operational area of a portable computer according to a twelfth embodiment of the present invention.

DETAILED DESCRIPTION

Preferred embodiments according to the present invention will be described hereinafter with reference to the accompanying drawings.

FIG. **1** and FIG. **2** show a portable computer **1** as an electronic apparatus. The portable computer **1** includes a main unit **2** and a display unit **3**.

The main unit **2** has an opaque colored resin housing **10**. The housing **10** has a case **11** and a cover **12**, and is formed like a flat box. Therefore, in this embodiment, the outside wall **10***c* of the housing **10** consists of the case **11** and cover **12**. The outside wall **10***c* has an outer surface **10***a* and an inner surface **10***b*. The outer surface **10***a* is exposed outward of the housing **10**.

The cover **12** has a first cover **12***a* and a second cover **12***b*. The outside surface of the first cover **12***a*, which is a part of the outer surface **10***a* exposed outward of the housing **10**, has a palm rest **13**. The second cover **12***b* is located in the rear of the first cover **12***a*. A keyboard **14** is fitted in the second cover **12***b*. In the rear end of the second cover **12***b*, a pair of display supporting feet **15** is provided separately in the width direction of the housing **10**. In this embodiment, the cover **12** is composed of a plurality of members (i.e. the first cover **12***a* and second cover **12***b*), but the cover **12** may be composed of one member.

A display unit **3** has a display housing **20** and a liquid crystal panel **21** fitted in the display housing **20**. In the front wall of the display housing **20**, an opening **22** is provided for a display. The opening **22** occupies most of the front wall. Through the opening **22**, the display screen of the liquid crystal panel **21** is exposed outward.

The display housing **20** has a pair of connection recesses **23** at one end. These connection recesses **23** consist of the recesses opened forward, downward and rearward of the display housing **20**. The connection recesses **23** are located separately in the width direction of the display housing **20**, and lead to the feet **15** of the housing **10**. These connection recesses **23** are rotatably supported by the feet **15** of the housing **10** via a hinge (not shown).

Thus, the display unit **3** is rotatable between a closed position, covering the palm rest **13** and keyboard **14** from the upper side, and an open position, which exposes the palm rest **13** and keyboard **14**. FIG. **1** shows the portable computer **1** in the open position.

A printed wiring board **16**, a Hard disk drive (hereinafter HDD, and not shown) and a pointing device **17** as an input device are contained in the housing **10**, as shown in FIG. **2** and FIG. **3**. The printed wiring board **16** and HDD are screwed to the bottom wall of the housing **10**. The pointing device **17** is provided with an input sheet **18** and a driving unit (not shown). The input sheet **18** senses electrostatic capacity, for example, and one side of the sheet is made flat as an input surface **18***a*. The driving unit is electrically connected to the input sheet **18**. The pointing device **17** is contained in the housing **10**, with the input surface **18***a*

**4**

secured to the inner surface **10***b* of the housing **10**, for example, at the center of the inside of the cover **12***a*.

As mentioned above, the housing **10** of the portable computer **1** is made of opaque colored resin. Thus, when the pointing device **17** is contained in the housing **10**, an operator cannot usually see the position of the input surface **18***a* from the outside of the housing **10**. In this embodiment, the portable computer **1** has an operation area **30** for input operations at the position corresponding to at least a part of the pointing device **17** in the outer surface **10***a* of the housing **10**.

In the portable computer **1**, the input sheet **18** is laid on the center of the inside of the first cover **12***a*, the operation area **30** is provided at the center of the palm rest **13** that is the outer surface of the first cover **12***a*. In this embodiment, the operation area **30** is provided at the position corresponding to substantially whole surface of the input surface **18***a*.

The operation area **30** may be distinguishable from the surrounding area by the sense of sight or touch. The operation area **30** may be realized by providing a recess **31** formed so that an end-face (bottom) **31***a* of the recess **31** has substantially the same area as the input surface **18***a*. Namely, an operator operates the end-face **31***a* of the recess **31** as the operation area **30**.

The position corresponding to the operation area **30** of the inner surface **10***b* of the housing **10** is at the same level as the surrounding area in this embodiment, as shown in FIG. **3**. Alternatively, the position corresponding to the operation area **30** of the inner surface **10***b* of the housing **10** may have its surface distinguished from the surrounding area as by means of a surface discontinuity at the boundary of the surrounding area and operation area.

In the portable computer **1**, the pointing device **17** is contained in the housing **10** as described below. First, the input sheet **18** is electrically connected to the driving unit. It is possible as mentioned later to first secure the input sheet **18** to the inner surface **10***b* of the housing **10**, and then connect the input sheet **18** electrically to the driving unit.

The input surface **18***a* of the input sheet **18** may be secured, with an adhesive or the like, at the position corresponding to the operation area **30** of the inner surface **10***b* of the housing **10**, i.e. the inner surface of the first cover **12***a*. An adhesive layer may be pre-formed on the input surface **18***a*. The first cover **12***a* secured to the pointing device **17** and the second cover **12***b*, fitted with the keyboard **14**, are fixed to the case **11**. The pointing device **17** is contained in the housing **10** by the above steps.

As the pointing device **17** is contained in the housing **10** with the input surface **18***a* laid on the inner surface **10***b*, a separate cover to protect the input surface **18***a* is unnecessary since a portion of the outside wall **10***c* provides a protection function. Therefore, the facility of containing the pointing device in the housing **10** may be enhanced. Further, as a separate protection cover of the input surface **18***a* may be omitted, the portable computer **1** may be made lighter.

Further, in the portable computer **1**, the pointing device **17** is fixed to the housing **10** by sticking the input sheet **18** to the inner surface **10***b* of the housing **10**. Therefore, not only the protection cover, but also a mechanical fixing member for fixing the pointing device **17** to the housing **10**, may be omitted. Therefore, the portable computer **1** may be still further improved both in terms of ease of assembly and weight.

Moreover, in the portable computer **1**, the operation area **30** for input operations is provided at the position corresponding to at least a part of the pointing device **17** in the outer surface **10***a* of the housing **10**. Thus, even if the

EXHIBIT 1 Page 9 of 13

US 7,156,693 B2

5

pointing device 17 is contained in the housing 10 with the input surface 18a laid on the inner surface 10b, the position of the input surface 18a may be distinguished from the outside of the housing 10, providing good operability.

Further, the operation area 30 may be distinguished from the surrounding area by the sense of sight or touch. It is unnecessary to provide an opening in the housing 10 to expose the pointing device 17. Therefore, the design flexibility and design itself of the housing 10 will be improved.

Further, the operation area 30 may be provided in the outer surface 10a of the housing 10 by forming a recess 31 at a predetermined position when molding the housing 10, for example. Namely, the number of manufacturing processes for forming the operation area 30 may be reduced, simplifying its structure.

Making the housing 10 of resin is preferable considering the possibility of adversely influencing the operation of the pointing device 17, when the input surface 18a of the input sheet 18 to sense electrostatic capacity contactings the housing 10. The palm rest 13 is provided in the outer surface 10a of the housing 10, and the operation area 30 is provided in the palm rest 13, improving the operability of the pointing device 17.

FIG. 4 shows a second embodiment of the present invention. In this embodiment, a projection 32 is formed in the inner surface 10b of the housing 10 when molding the housing 10, so that the end-face (lower side) 32a becomes substantially the same area as the input surface 18a. The other structures of a personal computer 1 in this embodiment than the projection 32 are the same as that of the first embodiment. The same reference numerals are given to the same parts, therefore description of those parts will be omitted.

In this structure, it is easy to align the position of the input sheet 18 with the operation area 30 when laying the input surface 18a over the inner surface 10b of the housing 10.

Next, a third embodiment of the present invention will be described with reference to FIG. 5.

In the portable computer 1, the operation area 30 has a projection 33. Namely, the end-face (upper surface) 33a of the projection 33 becomes the operation area 30. The projection 33 may be formed so that the end-face 33a has substantially the same area as the input surface 18a. The position corresponding to the operation area 30 in the inner surface 10b of the housing 10 may be at the same level as the surrounding area, as shown in FIG. 5. Alternatively, the position corresponding to the operation area 30 in the inner surface 10b of the housing 10 may have its surface distinguished from the surrounding area as by means of a surface discontinuity at the boundary of the surrounding area and operation area. FIG. 4 is only one example of such a surface boundary discontinuity. Other examples include having the operation area 30 recessed as in FIG. 7, having a different texture or color region for the operation area as compared to the surrounding area or any other way to permit facile recognition of the operation area. Such facile recognition of the operation area permits application of the input sheet 18 to be easily positioned at the appropriate location for securing same to the operation area on the inner surface 10b.

The rest of the configuration, including the parts not shown, is the same as in the above-mentioned first embodiment. The same reference numerals are given to the same parts, therefore description of those parts will be omitted.

According to this embodiment, the same effect as the first embodiment may be obtained. The operation area 30 is provided in the outer surface 10a of the housing 10, by forming the projection 33 at a predetermined position when

6

molding the housing 10. Namely, the number of manufacturing processes for forming the operation area 30 may be reduced, simplifying its structure.

FIG. 6 shows a fourth embodiment of the present invention. In this embodiment, a recess 34 in the inner surface 10b of the housing 10 is formed, so that the end-face (bottom) 34a has substantially the same area as the input surface 18a. In this structure, it is easy to align the position of the input sheet 18 with the operation area 30 when laying the input surface 18a over the inner surface 10b of the housing 10. As the rest of the configuration is the same as in the above-mentioned third embodiment, the same reference numerals are given to the same parts, and description of those parts will be omitted.

Hereinafter, a fifth embodiment of the present invention, or a portable computer 1, will be described with reference to FIG. 7.

In the portable computer 1, the operation area 30 has the recess 31, and a sticker 35 to indicate the operation area 30 is stuck to the operation area 30. The sticker 35 covers substantially the whole area of the end-face 31a of the recess 31.

The sticker 35 may be a paper or resin film having adhesive in one side 35a. The other side 35b of the sticker 35 having no adhesive may be colored and/or printed with patterns.

As described in the third embodiment, when the operation area 30 has the projection 33, the sticker 35 may be stuck to the end-face 33a of the projection 33. Even if the sticker 35 is stuck to the flat outer surface 10a of the housing, the seal may indicate the operation area 30. In this case, it is recommended to print the other side 35b of the sticker 35 with different colors and/or patterns from the outer surface 10a of the housing 10. The rest of the configuration, including the parts not shown, is the same as that in the above-mentioned first embodiment. The same reference numerals are given to the same parts, therefore description of these parts will be omitted.

According to this embodiment, the same effect as the first embodiment may be obtained. Desired colors and/or patterns may be printed on the sticker 35 to indicate the operation area 30, and the design of the housing 10 may be improved.

A sixth embodiment of the invention will be described referring to FIG. 8.

A portable computer 1 is provided with a first painted layer 36 in the operation area 30 to indicate the operation area 30. In the areas other than the operation area 30, a second painted layer 37 with colors or print different from the first painted layer is provided.

The operation area 30 may be formed to be at the same level as the surrounding area. When the operation area 30 has the recess 31 or the projection 33, as in the first or third embodiment, the first painted layer 36 may be provided in the end-face 31a of the recess 31 or the end-face 33a of the projection 33. The second painted layer 37 is omissible.

The rest of the configuration, including the parts not shown, is the same as that in the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted. According to this embodiment, the same effect as the first embodiment may be obtained.

It is possible to provide the second painted layer 37 with a different color from the housing 10, and to omit the first painted layer 36. In this structure, the operation area 30 is the

EXHIBIT 1 Page 10 of 13

US 7,156,693 B2

**7**

same color as the housing **10**, and is discriminated from the other areas with the same color by being framed by the second painted layer **37**.

FIG. **9** through FIG. **11** show a portable computer **1** as a seventh embodiment of the invention.

The operation area **30** in the portable computer **1** is made with a different surface roughness from at least the surrounding area. When the operation area **30** has the recess **31** or the projection **33**, as in the first or third embodiment, the end-face **31***a* of the recess **31** or the end-face **33***a* of the projection **33** may be made with different surface roughness from the surrounding area. The areas other than the operation area **30** may be made with a different surface roughness from the operation area **30**, or may be made without a rough surface. Further, the surface of the operation area **30** may not be rough, and the area other than the operation area **30** may be made with a predetermined surface roughness.

In this embodiment, the outer surface **10***a* of the housing **10** is made flat, and only the operation area **30** is made with a desired surface roughness. FIG. **11** shows the surface condition of the operation area **30** with that of the outer surface **10***a* next to the operation area **30**, magnifying a part of the housing **10** shown in FIG. **10**. The rest of the configuration, including the parts not shown, is the same as the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted.

Hereinafter, an eighth embodiment of the invention, or a portable computer **1**, will be described with reference to FIG. **12** and FIG. **13**.

In the portable computer **1**, the operation area **30** is made to be at the same level as the surrounding area and to have a mesh-like surface. Providing a circular or polygonal hole **38** with a predetermined interval in the operation area **30** of the outside wall **10***c* forms the mesh part. The size, shape and interval of the holes **38** are determined so as to distinguishable from the surrounding area. In this embodiment, the outer surface **10***a* of the housing **10** is made flat. The rest of the configuration, including the parts not shown, is the same as the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted.

Next, a ninth embodiment of the invention, or a portable computer **1**, will be described with reference to FIG. **14**.

In the portable computer **1**, the operation area **30** is made to be at the same level as the surrounding area and to have a plurality of hemispheric recesses **39** at a predetermined interval. The size, shape and interval of these recesses **39** are determined so as to distinguishable from the surrounding area as well as the holes of eighth embodiment. The rest of the configuration, including the parts not shown, is the same as the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted.

FIG. **15** shows a portable computer **1** described as a tenth embodiment of the invention.

The operation area **30** in the portable computer **1** is made to be at the same level as the surrounding area and to have a plurality of hemispheric projections **40** at a predetermined interval. The size, shape and interval of these projections **40** are determined so as to distinguishable from the surrounding area. The rest of the configuration, including the parts not shown, is the same as the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted.

When the operation area **30** has the recess **31** or the projection **33**, as in the first or third embodiment, the mesh part in the eighth embodiment, the plurality of recesses **39** in the ninth embodiment, and the plurality of projections **40**

**8**

in the tenth embodiment may be formed in the end-face **31***a* of the recess **31** or the end-face **33***a* of the projection **33**.

A eleventh embodiment of the invention, or a portable computer **1**, will be described with reference to FIG. **16**.

As shown in FIG. **16**, the portable computer **1** has a pointing device **17**, which is used as an input device. The pointing device **17**, the input sheet **18** consists of many input sections, for example, two input sections (not shown) of first input section and second input section. The first input section is used to perform an input operation, such as moving a pointer on the display screen. The second input section is used to perform another input operation, such as scrolling the screen.

The operation area **30** of the pointer device **17** also consists of two sections of first operation section **41** and second operation section **42**. The first operation section **41** is associated with the first input section of the input sheet **18**. The second operation section **42** is associated with the second input section of the input sheet **18**.

In this embodiment, the operation area **30** has a recess **31**. The recess **31** is provided with a rib **43** to divide the first and second operation sections **41** and **42**. The same reference numerals are given to the same parts as in the first embodiment, and their description will be omitted.

The number of input sections in the input sheet **18** is optional. The operation sections may be divided corresponding to a part or all of the input sections. The operation sections may be divided not only by a rib, but also by a groove, seal, paint, mesh, surface roughness, multiple recesses, multiple projections, or combination of the above, to be distinguishable from the adjacent operation section. Further, the operation area **30** may not have the recess **31**, may have the projection **33**, or may be made to be at the same level as the surrounding area. In either case, the operation section may be made distinguishable from the adjacent operation section by a rib, a groove, seal, painting, mesh, surface roughness, multiple recesses, multiple projections, or combination of the above.

FIG. **17** shows a portable computer **1** of a twelfth embodiment of the present invention.

The portable computer **1** is provided with a transparent housing **10** having an outside wall **10***c*. In other words, all of the case **11**, first cover **12***a*, and second cover **12***b* are made of transparent resin such as acrylic. The housing **10** may be either colorless transparent or colored transparent. Colored transparent includes black transparent and gray transparent, which is an intermediate color between transparent and black transparent, in addition to chromatic transparent such as red transparent, blue transparent and yellow transparent.

A first colored layer **51** is provided at least on a part of the pointing device **17** in the inner surface **10***b* of the housing **10** at the position corresponding to substantially all areas of the input surface **18***a*. A second colored layer **52** with a different color from the first colored layer **51** is provided at the position other than the position corresponding to the input surface **18***a* in the inner surface **10***b* of the housing **10**. The colored layers **51** and **52** may be either opaque or transparent. The color mentioned here includes not only chromatic colors, but also achromatic colors such as black, white and gray. These colored layers **51** and **52** may be provided by a seal or by paint.

The operation area **30** for the input operations may be provided at least on a part of the pointing device **17** in the inner surface **10***b* of the housing **10**, for example, at the position corresponding to substantially the whole area of the input surface **18***a*. The operation area **30** may be distinguishable from the surrounding area by the sense of sight or touch, and may be applied to any operation area **30** described in the first to eleventh embodiments.

EXHIBIT 1 Page 11 of 13

US 7,156,693 B2

**9**

In this embodiment, the operation area **30** has the recess **31**. The position of the input surface **18***a* of the pointing device **17** may be distinguished by the first colored layer **51**, and the operation area **30**, like the recess **31**, may be omitted. The rest of the configuration, including the parts not shown, is the same as in the above-mentioned first embodiment. The same reference numerals are given to the same parts, and their description will be omitted.

The housing **10** in this embodiment is transparent, and the first colored layer **51** provided in the inner surface **10***b* of the housing **10** may be visually identified through the housing **10**. The first colored layer **51** is provided at the position corresponding to at least a part of the pointing device **17**, and the position of the pointing device **17** may be distinguished by the colored layer **51** also from the outside of the housing **10**.

By the way, although the whole housing **10** is transparent in this embodiment, it is possible to merely make at least the part provided with the operation area **30** transparent. For example, when the operation area **30** is provided in the palm rest **13**, at least the first cover **12***a* may be made of a transparent material.

Moreover, the same function and effect as those in the twelfth embodiment may be obtained even though the second colored layer **52** is omitted and the first colored layer **51** is provided with a different color from the housing **10** in at least a part of the pointing device **17**.

Further, the same function and effect as those in the twelfth embodiment may be obtained by omitting the first colored layer **51** and providing the second colored layer **52** with a different color from the housing **10** in the area excluding at least a part of the pointing device **17**.

The present invention is not restricted to the above-mentioned first through twelfth embodiments. The input surface **18***a* of the pointing device **17** may be laid on any part of the inner surface **10***b* of the housing **10**. The operation area **30** may be provided at a position corresponding to at least a part of the pointing device **17**.

An electronic apparatus according to the present invention is not limited to a portable computer, and is applicable to a wide variety of electronic apparatuses, including an electronic diary and PDA.

Additional advantages and modifications will readily occur to those skilled in the art. Therefore, the invention in its broader aspects is not limited to the specific details and representative embodiments shown and described herein. Accordingly, various modifications may be made without departing from the spirit or scope of the general inventive concept as defined by the appended claims and their equivalents.

The invention claimed is:

**1**. An electronic apparatus, comprising:
a housing which contains an electronic component therein, and has an outside wall which has an exterior surface exposed outward of said housing and an interior surface exposed inward of the housing, the housing having an operation area in the exterior surface;
a pointing device disposed entirely inside the housing, having a flat input surface secured with an adhesive to the interior surface of the outside wall adjacent the operation area so that no portion of the flat input surface is exposed as the outside wall of said housing, the outside wall being larger than the flat input surface, the flat input surface receiving input operations through the operation area; and
a colored sticker stuck to the operation area.

**2**. An electronic apparatus according to claim **1**, wherein the operation area has a recess formed on the exterior surface.

**10**

**3**. An electronic apparatus according to claim **1**, wherein the operation area has a projection formed on the exterior surface.

**4**. An electronic apparatus according to claim **1**, further comprising a painted layer that is provided in the operation area.

**5**. An electronic apparatus according to claim **1**, wherein the operation area is made with a surface roughness different from a surrounding area.

**6**. An electronic apparatus according to claim **1**, wherein the operation area has a mesh portion.

**7**. An electronic apparatus according to claim **1**, wherein the operation area has a plurality of recesses provided therein.

**8**. An electronic apparatus according to claim **1**, wherein the operation area has a plurality of projections provided therein.

**9**. An electronic apparatus according to claim **1**, wherein the operation area has a first operation area for first operation, and a second operation area provided separately from said first operation area, for second operation.

**10**. An electronic apparatus, comprising:
a housing having a transparent outside wall which has an interior surface;
a pointing device arranged in said housing, the pointing device having a flat input surface laid on the interior surface of the outside wall; and
a colored layer provided at a position corresponding to at least a part of said pointing device of said housing, wherein a color of the colored layer being different from a color of a area surrounding the position.

**11**. An electronic apparatus according to claim **10**, wherein said housing is made of a resin.

**12**. An electronic apparatus according to claim **10**, wherein the transparent outside wall has an exterior surface exposed outward of said housing, and an operation area provided at the position corresponding to the colored area in the exterior surface.

**13**. An electronic apparatus, according to claim **12**, wherein the operation area has a recess formed on the exterior surface.

**14**. An electronic apparatus according to claim **12**, wherein the exterior surface has a palm rest in which the operation area is provided.

**15**. An electronic apparatus, comprising:
a housing which contains an electronic component therein, and has an outside wall which has an exterior surface and an interior surface exposed inward of the housing;
a pointing device arranged inside of said housing, the pointing device having a flat input surface secured with an adhesive on the interior surface of the outside wall, so that no portion of the flat input surface is exposed as the outside wall of said housing, the outside wall being larger than the flat input surface, the flat input surface receiving input operations through the outside wall; and
a sticker stuck on the exterior surface of the outside wall opposite to the interior surface on which the flat input surface of the pointing device is secured.

**16**. An electronic apparatus according to claim **15**, wherein the sticker is a colored sticker.

**17**. An electronic apparatus according to claim **15**, further comprising a recess formed on the exterior surface of the outside wall, wherein the sticker covers the recess, and the flat input surface of the pointing device is secured on the interior surface opposing the recess.

EXHIBIT 1 Page 12 of 13

US 7,156,693 B2

11

**18**. An electronic apparatus according to claim **15**, wherein the sticker is printed with a pattern.

**19**. An electronic apparatus according to claim **18**, further comprising a recess formed on the exterior surface of the outside wall, wherein the sticker covers the recess, and the flat input surface of the pointing device is laid on the interior surface opposing the recess.

**20**. An electronic apparatus, comprising:

a housing which contains an electronic component therein, and has an outside wall which has an exterior surface exposed outward of said housing and an interior surface exposed inward of the housing, the housing having an operation area in the exterior surface;

a pointing device disposed inside of the housing, having a flat input surface secured with an adhesive on the

12

interior surface of the outside wall, said adhesive interposed between said flat input surface of the pointing device and the interior surface of the outside wall and aligned with the operation area so that no portion of the flat input surface is exposed as the outside wall of said housing, the outside wall being larger than the flat input surface, the flat input surface receiving input operations through the operation area.

**21**. An electronic apparatus according to claim **20**, wherein the operation area has a recess formed on the exterior surface.

**22**. An electronic apparatus according to claim **21**, further comprising, a colored sticker positioned in the recess.

\* \* \* \* \*

EXHIBIT 1 Page 13 of 13



US005430867A

# United States Patent [19]

## Gunji

[11]   **Patent Number:**   **5,430,867**

[45]   **Date of Patent:**   **Jul. 4, 1995**

[54]   **DATA PROCESSING SYSTEM HAVING A RESUME FUNCTION AND AN OPERATING METHOD THEREOF**

[75]   Inventor:   **Shizuka Gunji**, Oome, Japan

[73]   Assignee:   **Kabushiki Kaisha Toshiba**, Kawasaki, Japan

[21]   Appl. No.:   **247,408**

[22]   Filed:   **May 23, 1994**

### Related U.S. Application Data

[63]   Continuation of Ser. No. 40,995, Mar. 31, 1993, abandoned, which is a continuation of Ser. No. 507,490, Apr. 11, 1990, Pat. No. 5,222,231.

[30]   **Foreign Application Priority Data**

Apr. 28, 1989 [JP]   Japan ................... 1-110546

[51]   Int. Cl.6 ......................... G06F 12/16; G06F 1/00
[52]   U.S. Cl. .................................... 395/575; 395/750; 364/280.3; 364/286.4; 364/286.5; 364/DIG. 1; 380/4
[58]   Field of Search ............... 395/575, 750, 425, 275; 364/707; 371/66, 12; 380/3, 4, 23, 25, 52; 340/825.31

[56]   **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,458,315 | 7/1984 | Uchenick | 380/4 |
| 4,558,176 | 12/1985 | Arnold et al. | 380/4 |
| 4,590,552 | 5/1986 | Guttag et al. | 395/425 |
| 4,604,708 | 8/1986 | Lewis | 395/575 |
| 4,685,056 | 8/1987 | Barnsdale, Jr. et al. | 395/425 |
| 4,698,750 | 10/1987 | Wilkie et al. | 395/425 |
| 4,752,068 | 6/1988 | Endo | 273/434 |
| 4,852,044 | 7/1989 | Turner et al. | 395/425 |
| 4,864,494 | 9/1989 | Kobus, Jr. | 395/575 |
| 4,907,150 | 3/1990 | Arroyo et al. | 395/575 |

| | | | |
|---|---|---|---|
| 4,959,860 | 9/1990 | Watters et al. | 380/4 |
| 5,001,554 | 3/1991 | Johnson et al. | 348/10 |
| 5,134,700 | 7/1992 | Eyer et al. | 395/425 |
| 5,222,231 | 6/1993 | Gunji | 395/575 |
| 5,276,890 | 1/1994 | Arai | 395/750 |

### FOREIGN PATENT DOCUMENTS

61-262864  11/1986  Japan .

### OTHER PUBLICATIONS

Manual of the Automated Patent System, Mar. 8, 1990, U.S. Patent and Trademark Office.
IBM Technical Disclosure Bulletin, vol. 30, No. 5, Oct., 1987, pp. 57–58, "Security System for Personal Computers".

*Primary Examiner*—Gopal C. Ray
*Attorney, Agent, or Firm*—Oblon, Spivak, McClelland, Maier, & Neustadt

[57]   **ABSTRACT**

A data processing method and apparatus have a resume function and use a password. When a power switch of a data processing system is turned on while it is selected that the resume function is to be enabled and the password is to be collated, the data processing system displays a message prompting an operator to input a password. When a predetermined password is input from a keyboard or the like, the data processing system executes resume processing, i.e., executes data processing to be continued to data processing executed immediately before the power switch was turned off. When the predetermined password is not input, the resume operation is inhibited, and a content saved by the resume function can be prevented from being disclosed to or destroyed by a third party.

**25 Claims, 5 Drawing Sheets**



EXHIBIT 2 Page 1 of 15

**U.S. Patent**          July 4, 1995          Sheet 1 of 5          5,430,867



F I G.   1

EXHIBIT 2 Page 2 of 15

**U.S. Patent**          July 4, 1995          Sheet 2 of 5          5,430,867



F I G.   2

EXHIBIT 2 Page 3 of 15



F I G.  3

EXHIBIT 2 Page 4 of 15

Case 8:10-cv-00074-SVW-MLG   Document 1   Filed 01/19/10   Page 32 of 60   Page ID #:32



F I G.   4

EXHIBIT 2 Page 5 of 15



F I G.   5

EXHIBIT 2 Page 6 of 15

5,430,867

**1**

## DATA PROCESSING SYSTEM HAVING A RESUME FUNCTION AND AN OPERATING METHOD THEREOF

This application is a Continuation of application Ser. No. 08/040,995, filed on Mar. 31, 1993, now abandoned, which is a continuation of application Ser. No. 07/507,490, filed on Apr. 11, 1990, U.S. Pat. No. 5,222,231.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a computer having a resume function, i.e., a function of executing data processing, after the main power switch is turned back on, according to data processing state which had been in operation immediately before a main power switch was turned off.

2. Description of the Related Art

A computer having a resume function is known. The resume function is a function of resuming a job (data processing and/or display) which was in operation immediately before a main power switch was turned off when the main power switch is turned on.

The resume function is realized as follows. An ON/-OFF (enable/disable) state of the resume function is set in a setup mode (installation mode). When the main power switch is turned off while the resume function is enabled, necessary data in memories, registers, and pointers are saved in a backup memory. When the main power switch is turned on again, the saved data are restored to their original locations. Thereafter, the job (data processing) continues according to the restored content.

In a conventional computer, when the resume function is enabled, even if a third party who has no right to use the computer turns on the main power switch of the computer, the contents of the data processing system immediately before the power switch was turned off is restored. For this reason, in a conventional computer having the resume function, the data saved by the resume function may be destroyed by a third party, thus posing a problem of data protection. Since a display in use when the power switch was turned off is displayed by the resume function when the power switch is turned on, the data may be presented to a third party.

### SUMMARY OF THE INVENTION

The present invention has been made in consideration of the above situation, and has as its object to provide an improved computer and a data processing method.

It is another object of the present invention to provide a computer and a data processing method, which can prevent the contents saved by a resume function from being destroyed by a third party or being disclosed to the third party.

In order to achieve the above object, a data processing system having a resume function of the present invention comprises:

switch means (11) for turning on and off a main power source of the data processing system;

OFF detection means (9, 4) for detecting that the switch means (11) is turned off;

backup memory means (2), responsive to the detection result of the OFF detection means (4, 9), for holding a content of data processing executed by

**2**

the data processing means (1–8, 12) immediately before the switch means (11) is turned off;

ON detection means (4, 9) for detecting that the switch means (11) is turned on;

identification data holding means (2) for holding identification data for specifying an operator;

input means (6, 8) for inputting the identification data for specifying an operator;

discrimination means (4), responsive to the ON detection means (4, 9), for discriminating whether or not identification data input from the input means (6, 8) after the switch means (11) is turned on coincides with identification data stored in the holding means (2); and

means (2, 4) for, when the discrimination means (4) detects a coincidence, executing data processing, from processing executed immediately before the switch means (11) is turned off, in accordance with a storage content of the backup memory means (2).

In order to achieve the above object, a data processing method of the present invention comprises the steps of:

processing data;

turning off a power switch;

holding a content of data processing executed in the data processing step in response to OFF of the power switch;

turning on the power switch again;

inputting identification data for specifying an operator after the power switch is turned on;

collating the input identification data and prestored identification data; and

executing data processing, to be continued to data processing executed before the power switch is turned off, in accordance with the contents held in the holding step when a coincidence between the two identification data is detected in the collating step.

As described above, according to the computer and the data processing method of the present invention, even if a power switch of a data processing system is turned on, resume processing is inhibited until the correct identification data is input. For this reason, the contents saved by the resume function can be prevented from being disclosed to or destroyed by a third party.

### BRIEF DESCRIPTION OF THE DRAWINGS

A more complete appreciation of the invention and many of the attendant advantages thereof will be readily obtained as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, wherein:

FIG. 1 is a block diagram showing an arrangement of a computer according to the first embodiment of the present invention;

FIG. 2 is a flow chart showing an operation in a setup mode of the computer shown in FIG. 1;

FIG. 3 is a flow chart showing an operation when a power switch of the computer shown in FIG. 1 is turned on;

FIG. 4 is a flow chart showing an operation when the power switch of the computer shown in FIG. 1 is turned off; and

FIG. 5 is a flow chart showing a modification of the flow chart shown in FIG. 3.

EXHIBIT 2 Page 7 of 15

5,430,867

**3**

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals designate identical or corresponding parts throughout the several views, and more particularly to FIG. 1 thereof.

FIG. 1 is a block diagram of a computer having a resume function.

The computer shown in FIG. 1 comprises a BIOS ROM (Basic Input Output System Read Only Memory) 1; a backup RAM 2; a system memory (main memory) 3; a CPU (Central Processing Unit) 4; a display controller 5; a keyboard controller 6; a display 7; a keyboard 8; a power controller 9; a power circuit 10; a power switch 11; and a system bus 12.

The BIOS ROM 1 stores a BIOS (Basic Input Output System), and a setup program PA (to be described later).

The backup RAM 2 comprises a volatile memory supplied with a backup power VBK or an EEPROM. The backup RAM 2 saves the contents of a system memory, registers in the CPU, control registers, hardware registers, an instruction pointer, and the like when the main power switch is turned off while the resume function is enabled. The backup RAM 2 includes a password area for storing a password, a check sum, and a password flag (to be described later). Normally, access to this password area is inhibited.

The system memory 3 as the main memory stores a setup program PB, data, programs, and the like. The difference between the setup programs PB and PA will be described later. The system memory 3 is used upon execution of the setup program, and is also used as a data area for the BIOS ROM 1.

The CPU 4 is the core of the arrangement of FIG. 1, and is operated in accordance with the programs stored in the system memory 3 to execute data processing.

The display controller 5 controls the operation of the display. The display 7 comprises, e.g., a liquid crystal display, a plasma display, a CRT, or the like. The display 7 displays characters, images, and the like under the control of the display controller 5.

The keyboard controller 6 detects an operation of a key at the keyboard 8, and informs the content of the key operation to the CPU 4.

The power controller 9 includes, e.g., an exclusive power control CPU for controlling power supply. When the power switch 11 is ON, the power controller 9 outputs an operation voltage VD; when the power switch is OFF, it outputs a backup voltage VBK. Although not shown, when a plurality of types of operation voltages and backup voltages are required, the power controller 9 generates required voltages.

The power circuit 10 includes, e.g., a battery, a backup battery, an AC adapter circuit, a charger, and the like, and supplies a power to the power controller 9.

The system bus 12 includes a data bus, an address bus, a control bus, and the like, and is connected to the BIOS ROM 1, the backup RAM 2, the CPU 4, the display controller 5, the keyboard controller 6, and the power controller 9 to transfer data, addresses, control signals to them.

The setup program PA stored in the BIOS ROM 1 is a program for performing various setups (e.g., ON/-OFF of the resume function), and changing setup values. For example, the setup program PA includes a routine for setting an ON/OFF state of the resume

**4**

function, a routine for setting a password, an IRT (Initial Reliability Test), a control routine of various I/O devices, and the like. The setup program PA is started upon operation of a specific key or keys on the keyboard 8.

The setup program PB performs setup of an ON/-OFF state of the resume function, and setup of a password together with the setup program PA. In addition, the setup program PB sets up hardware components. The operations of the setup program PB are different from those of the setup program PA except for setup of an ON/OFF state of the resume function, and setup of a password. The setup program exists as an external command of the computer.

The operation of the computer shown in FIG. 1 will be described below with reference to FIGS. 2 through 4.

The characteristic feature of the operation of the computer shown in FIG. 1 will be briefly described. When the power is turned on (i.e., when the power switch 11 is turned on), if the resume function is enabled, the computer shown in FIG. 1 causes the display 7 to display a message to prompt input of a password. When an operator inputs a correct password, the resume function is executed, and data processing and display are resumed from a state which execute immediately before the power switch 11 was turned off. On the other hand, when the power switch 11 is turned on, if the resume function is disabled, this computer initializes its hardware components in the same manner as in a computer without the resume function, and then executes data processing.

An operation of setting an ON/OFF state of the resume function of the computer with the arrangement shown in FIG. 1 will be described below with reference to FIG. 2.

After the power switch 11 is turned on, an operator depresses a predetermined key on the keyboard 8 to start the setup program PA or operates the keyboard 8 to input a command for starting the setup program PB. The keyboard controller 6 detects the key operation, and supplies a key operation signal to the CPU 4. In response to the key operation signal, the CPU 4 starts one of the setup programs PA and PB (step S1). The setup program includes various other contents, as described above, and their processing is executed if necessary (step S2). When processing of the setup program reaches a stage of setting an ON/OFF state of the resume function, the CPU 4 controls the display controller 5 to cause the display 7 to display a frame for inquiring whether or not the resume function is to be enabled (step S3). The inquiry frame may be a menu for inquiring whether or not the resume function is to be enabled. In response to this inquiry, an operator inputs an answer indicating whether the resume function is to be enabled or disabled at the keyboard 8. The input content is checked in step S4.

If the input contents indicates that the resume function is to be disabled, the CPU 4 sets a resume disable flag indicating OFF of the resume function (or resets a resume enable flag) at a predetermined position of the backup RAM 2 (step S5). Thereafter, the flow advances to other processing.

If the input content indicates that the resume function is to be enabled, the flow advances to step S6. In step S6, the CPU 4 sets the resume enable flag indicating ON of the resume function at the predetermined position of the backup RAM 2. The CPU 4 controls the display

EXHIBIT 2 Page 8 of 15

5,430,867

| 5 | 6 |

controller 5 to cause the display 7 to display a frame for inquiring whether or not a password is to be set (step S7). This inquiry frame may be a menu for inquiring whether or not a password is to be set. In response to the inquiry on the screen, an operator inputs an answer indicating whether or not a password is to be set at the keyboard 8. The input content is checked in step S8.

If the input content does not indicate that a password is to be set, a flag indicating this is set at a predetermined position of the backup RAM 2 (or resets a password flag) (step S9). Thereafter, the flow advances to other processing.

If the input content indicates that a password is to be set, the flow advances to step S10. In step S10, the CPU 4 sets the password flag indicating that a password is to be set at the predetermined position of the backup RAM 2. When setup of a password is selected, an operator inputs a password from the keyboard 8. The CPU 4 causes the display 7 to display the input password. When the displayed password is correct, the operator depresses an enter key. In response to this, input of the password is detected in step S11. A check sum corresponding to the input password is calculated (step S12). The input password and the check sum are stored in the backup RAM 2 together with the password flag (step S13). The password is saved in the backup RAM 2 in the form of ASCII codes. Thereafter, the flow advances to other processing. After the setup operation, normal data processing is continued.

When one or a plurality of passwords are set in advance in the computer to restrict users of the computer, it is checked to see if the input password coincides with one of these passwords. Only when a coincidence is found, the input password may be set in the backup RAM 2.

An operation when the power switch 11 is turned on will be described below.

When the power switch 11 is turned on, the power controller 9 detects it. The power controller 9 supplies the operation voltage VD. The power controller 9 outputs an NMI signal indicating power ON to the CPU 4. In response to the NMI signal, the CPU 4 executes the operation shown in FIG. 3.

The CPU 4 checks to see if the resume enable flag is set in the RAM 2 (step S21). If no resume enable flag is set in the backup RAM 2, since the resume operation need not be executed, the CPU 4 executes normal hardware initialization (step S22). Thereafter, the flow advances to normal data processing (step S23). If the resume enable flag is set in the RAM 2, it is checked to see if the password flag is set (step S24).

If the password flag is not set, the CPU 4 restores the contents saved in the backup RAM 2 upon previous power OFF to the original locations (step S25). For example, the saved contents of the CPU registers, the system memory 3, the hardware registers, and the instruction pointer are restored to the CPU registers, the system memory 3, the hardware registers, and the instruction pointer. Thereafter, the flow advances to normal data processing (step S23).

If it is determined in step S24 that the password flag is set, the check sum stored in the backup RAM 2 is checked, and it is also checked if the content of the backup RAM 2 is not destroyed (step S26). If an error is detected as a result of checking, an error message is displayed on the display 7 (step S27), and hardware initialization is executed (step S22). Thereafter, the flow advances to normal data processing (step S23).

If it is determined in step S26 that the check result is OK (no error), a message to urge the operator to input a password is displayed on the display 7 (step S28). When the operator inputs a password according to this display, it is checked to see if the input password coincides with the prestored password (stored in the backup RAM 2 in step S13). If a coincidence is found between the two passwords, steps S25 and S23 described above are executed. On the other hand, if a noncoincidence is found between the input password and the prestored password, the flow returns to step S28 to urge the operator to reinput the password.

When the above-mentioned processing sequence is adopted, a state of data processing and a display state immediately before the power switch was turned off are resumed only when a correct password is input. That is, resume processing is executed. In other words, execution of resume processing is inhibited until the correct password is input.

More specifically, even when the resume function is enabled, the flow forms an endless loop unless a predetermined password is input, and the content of the backup RAM 2 is not restored in the registers, and the like. In addition, the content of the backup RAM 2 can be prevented from being destroyed. Even when the power switch 11 is turned off during the endless loop, if the power switch 11 is turned on again, processing is executed from step S21 in FIG. 3. Therefore, the content of the RAM 2 can be protected.

An operation of the CPU 4 when the power switch 11 is turned off will be described below with reference to FIG. 4.

When the power controller 9 detects that the power switch 11 is turned off, it sends a signal indicating this, e.g., the NMI signal to the CPU 4. In response to the NMI signal, the CPU 4 executes the processing shown in FIG. 4. The CPU 4 first checks if the resume enable flag is set in the backup RAM 2 (step S41). If the resume enable flag is not set, the CPU 4 controls the power controller 9 to stop output of the operation voltage VD and to output the backup voltage VBK (step S42).

When the resume enable flag is set, the CPU 4 saves the contents of the registers in the CPU 4, the system memory 3, the control registers, the hardware registers, and the instruction pointer (pointer indicating a position of a program in execution when the power switch 11 is turned off) to the backup RAM 2. As described above, the saved contents are restored from the backup RAM 2 to original locations when the power switch 11 is turned on again. Thereafter, the CPU 4 controls the power controller 9 to stop the output of the operation voltage VD and to output the backup voltage VBK (step S42).

The backup voltage VBK is kept as the output until the power switch 11 is turned on and the operation voltage VD is generated. Thus, the contents saved in the backup RAM are held. When the backup voltage VBK is also supplied to the system memory 3, the content of the system memory 3 need not be saved to the backup RAM 2.

As described above, according to this embodiment, even when the resume function is enabled, the system cannot be resumed to a state immediately before the power switch was turned off unless a correct password is input. For this reason, data saved by the resume function can be prevented from being destroyed or disclosed to a third party.

EXHIBIT 2 Page 9 of 15

5,430,867

7

The present invention is not limited to the above embodiment. In the above embodiment, two types of setup programs are used. However, a single setup program may be used.

A password is used to check whether or not an operator is a legal user. In a computer comprising another personal identification data, e.g., ID card reader, an ID card may be used in place of a password.

If the setup program PA or PB is ready to start when the power switch 11 is turned on, the resume function may be switched to be OFF or setup of a password may be switched to OFF. In order to avoid this, as shown in FIG. 5, step S31 of disabling execution of the setup program may be inserted before step S21, and step S32 of enabling execution of the setup program may be inserted before step S23. Alternatively, execution of the setup program may be disabled in a loop constituted by steps S28, S29, and S30.

Obviously, numerous (additional) modifications and variations of the present invention are possible in light of the above teachings. It is therefore to be understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

1. A data processing system having a resume function and a security managing function, comprising:

switch means for switching on and off a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means has switched on or off said main power;

memory means, coupled to said switch detection means, and responsive to a detection result of said switch detection means, for storing contents of said data processing immediately before the main power is turned off;

holding means for holding identification data;

input means for inputting identification data for security management;

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means has switched on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing, from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means; and

means for inhibiting a resumption of the data processing, to prevent contents of the data processing from being revealed to an unauthorized person, in response to detection of a non-coincidence by said discriminating means.

2. The data processing system according to claim 1, further comprising:

selection means for selection of when identification data is to be collated, said selection means enabling discrimination by said discriminating means in response to the selection; and

allowing means, coupled to said holding means, for allowing setting of the identification data in said holding means.

8

3. The data processing system according to claim 1, further comprising:

second selection means for selecting enabling/disabling of the resume function; and

third selection means for selecting when to collate identification data,

wherein said discriminating means is operated when said second selection means selects enabling of the resume function and said third selection means selects collation of the identification data.

4. The data processing system according to claim 3, further comprising:

means for setting a first flag indicating ON/OFF of the resume function; and

means for setting a second flag indicating when identification data is to be collated,

wherein said discriminating means is operated when the first flag is set to indicate that the resume function is enabled and the second flag is set to indicate that the identification data is to be collated.

5. An operating method of a system which has a resume function and a security management system and which can run a plurality of programs comprising prestoring identification data, wherein said system comprises:

a data processor for processing data;

a power switch having ON and OFF states for switching the data processing system ON and OFF;

holding means for holding contents of data processing performed by said data processor in response to an OFF state of said power switch;

inputting means for inputting identification data for security management; and

collating means for collating identification data input by said inputting means and prestored identification data to ensure system security;

wherein said operating method comprises the steps of:

processing data by means of said data processor;

switching off the power switch;

holding the contents of the data held in said holding means and stopping the data processing when the power switch is turned OFF; then

switching on said power switch;

inputting identification data via the inputting means after said step of turning on said power switch;

collating the input identification data and prestored identification data;

resuming data processing from a data processing condition that existed when said power switch was turned off in accordance with the contents of the data held in the holding means during the holding step when a coincidence between the input identification data and prestored identification data is detected by the collating means during the collating step; and

inhibiting a resumption of data processing immediately before the main power is turned off so that data processing does not automatically resume when the power is subsequently turned on, to prevent contents of the data processing from being revealed to an unauthorized person, when non-coincidence between the input identification data and the prestored identification data is detected.

EXHIBIT 2 Page 10 of 15

5,430,867

**9**

6. The operating method according to claim 5, wherein said system further comprises:

first selecting means for selecting an ON/OFF state of a resume function; and

second selecting means for selecting when identification data is to be collated.

7. The operating method according to claim 6, further comprising the steps of:

discriminating when the ON state of the resume function is selected; and

discriminating when collation of identification data is selected,

wherein the collation steps are executed when said discriminating steps indicate that the resume function is ON and collation of the identification data is selected.

8. The operating method according to claim 6, wherein said data processing system further comprises:

means for displaying a message inquiring whether or not the resume function is to be enabled; and

means for displaying a message inquiring whether or not identification data is to be collated in a setup mode.

9. A data processing system having a resume function and a security managing function, comprising:

switch means for switching on and off a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means is switched on or off;

memory means, coupled to said switch detection means, and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is turned off;

holding means for holding identification data;

input means for inputting identification data for security management;

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means switches on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing from processing executed immediately before the main power was switched off in accordance with a storage content of said memory means; and

means for inhibiting a resumption of the data processing, to prevent an unauthorized person from resuming the data processing.

10. A data processing system having a resume function and a security managing function, comprising:

switch means for switching on and off a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means is turned on or off;

memory means, coupled to said switch detection means and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is turned off;

holding means for holding identification data;

**10**

input means for inputting identification data for security management;

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means switches on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means; and

means for inhibiting a resumption of the data processing for security management, in response to detection of a non-coincidence in said discriminating means.

11. A data processing system having a resume function and a security managing function, comprising:

switch means for switching to on and off states, a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means is switching the main power to the on state or to the off state;

memory means, coupled to said switch detection means and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is turned off;

holding means for holding identification data;

input means for inputting identification data for security management;

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means has switched on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing, from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means; and

means for inhibiting a resumption of the data processing in response to detection of a non-coincidence in said discriminating means.

12. A data processing system having a resume function and a security managing function, comprising:

switch means for switching on and off a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means is turned on or off;

memory means, coupled to said switch detection means, and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is turned off;

holding means for holding identification data;

input means for inputting identification data for security management;

EXHIBIT 2 Page 11 of 15

5,430,867

**11**

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means switches on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing, from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, in response to detection of a non-coincidence in said discriminating means, to prevent an unauthorized person from performing the data processing.

**13.** A data processing system having a resume function and a security managing function, comprising:

switch means having power on and power off states, for switching to an on and an off state, a main power of said data processing system;

switch detection means, coupled to said switch means, for detecting that said switch means is switched to its power on or its power off state;

memory means, coupled to said switch detection means, and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is turned off;

holding means for holding identification data;

input means for inputting identification data for security management;

discriminating means coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means turns on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing, from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, in response to detection of a non-coincidence in said discriminating means, to prevent an unauthorized person from interrupting the data processing.

**14.** A data processing system having a resume function and a security managing function, comprising:

switch means, having an on state and an off state, for switching a main power of said data processing system on and off;

switch detection means, coupled to said switch means, for detecting the state of said switch means;

memory means, coupled to said switch detection means, and responsive to a detection result of said switch detection means, for storing contents of data processing immediately before the main power is switched off;

holding means for holding identification data;

**12**

input means for inputting identification data for security management;

discriminating means, coupled to said switch detection means, said holding means, and said input means, said discriminating means being responsive to said switch detection means, for discriminating whether identification data input from said input means after said switch means turns on said main power coincides with identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, executing data processing from processing executed immediately before the main power was switched off, in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing in response to detection of a non-coincidence in said discriminating means, to prevent an unauthorized person from performing data processing with the data processing system.

**15.** A data processing system having a resume function and a security management system, comprising:

first indicating means for indicating saving of contents of data processing performed by said data processing system;

saving means, responsive to said first indicating means, for saving the contents of the data processing when said first indicating means indicates the saving of the contents of the data processing;

storing means for storing identification data for security management;

input means for inputting identification data for security management;

second indicating means for indicating resuming the data processing;

discriminating means coupled to said second indicating means, said storing means, and said input means, said discriminating means being responsive to said second indicating means, for discriminating whether identification data input from said input means coincides with identification data stored in said storing means;

executing means for, in response to detection of a coincidence in said discriminating means, executing resumption of the data processing in accordance with the contents saved by said saving means, and

means for inhibiting a resumption of data processing for security management, in response to detection of a non-coincidence in said discriminating means.

**16.** A data processing system having a resume function and a security management system, comprising:

first indicating means for indicating saving of contents of data processing performed by said data processing system;

saving means, responsive to said first indicating means, for saving the contents of the data processing when said first indicating means indicates the saving of the contents of the data processing;

storing means for storing identification data for security management;

input means for inputting identification data for security management;

second indicating means for indicating resuming the data processing;

discriminating means coupled to said second indicating means, said storing means, and said input

EXHIBIT 2 Page 12 of 15

5,430,867

**13**

means, said discriminating means responsive to said second indicating means, for discriminating whether identification data input from said input means coincides with identification data stored in said storing means;

executing means for, in response to detection of a coincidence by said discriminating means, executing resumption of the data processing in accordance with the contents saved by said saving means, and

means for inhibiting a resumption of data processing in response to detection of a non-coincidence by said discriminating means.

**17.** A data processing system having a resume function and a security management system, comprising:

first indicating means for indicating saving of contents of data processing performed by said data processing system;

saving means, responsive to said first indicating means, for saving the contents of the data processing when said first indicating means indicates the saving of the contents of the data processing;

storing means for storing identification data for security management;

input means for inputting identification data for security management;

second indicating means for indicating resuming the data processing;

discriminating means coupled to said second indicating means, said storing means, and said input means, said discriminating means being responsive to said second indicating means, for discriminating whether identification data input from said input means coincides with identification data stored in said storing means;

executing means for, in response to detection of a coincidence in said discriminating means, executing resumption of the data processing in accordance with the contents saved by said saving means, and

means for inhibiting a resumption of data processing, to prevent an unauthorized person from performing the data processing in response to detection of a non-coincidence by said discriminating means.

**18.** A data processing system having a resume function and a security management system, comprising:

first indicating means for indicating saving of contents of data processing performed by said data processing system;

saving means, responsive to said first indicating means, for saving the contents of the data processing when said first indicating means indicates the saving of the contents of the data processing;

storing means for storing identification data for security management;

input means for inputting identification data for security management;

second indicating means for indicating resuming of the data processing;

discriminating means coupled to said second indicating means, said storing means, and said input means, said discriminating means being responsive to said second indicating means, for discriminating whether identification data input from said input means coincides with identification data stored in said storing means;

executing means for, in response to detection of a coincidence by said discriminating means, execut-

**14**

ing resumption of the data processing in accordance with the contents saved by said saving means, and

means for inhibiting a resumption of data processing, to prevent an unauthorized person from interrupting the data processing in response to detection of a non-coincidence in said discriminating means.

**19.** A data processing system having a resume function and a security management system, comprising:

first indicating means for indicating saving of contents of data processing performed by said data processing system;

saving means, responsive to said first indicating means, for saving the contents of the data processing when said first indicating means indicates the saving of the contents of the data processing;

storing means for storing identification data for security management;

input means for inputting identification data for security management;

second indicating means for indicating resuming the data processing;

discriminating means coupled to said second indicating means, said storing means, and said input means, said discriminating means being responsive to said second indicating means, for discriminating whether identification data input from said input means coincides with identification data stored in said storing means;

executing means for, in response to detection of a coincidence in said discriminating means, executing resumption of the data processing in accordance with the contents saved by said saving means, and

means for inhibiting a resumption of data processing, to prevent an unauthorized person from performing data processing on said data processing system, in response to detection of a non-coincidence in said discriminating means.

**20.** An operating method of a system which has a resume function and a security management system and which can run a plurality of programs, comprising prestoring identification data, wherein said system comprises:

a data processor for processing data;

first indicating means for indicating saving of contents of data processing performed by said data processor;

holding means, responsive to said first indicating means, for holding contents of the data processing performed by said data processor when the first indicating means indicates the saving of the contents of the data processing performed by said data processor;

identification data storing means for storing identification data for security management;

second indicating means for indicating resuming of the data processing;

inputting means for inputting identification data for security management;

collating means for collating identification data input by said inputting means and the identification data stored in said identification data storing means;

wherein said operating method comprises the steps of:

processing data by means of the data processor;

indicating saving of the contents of the data processing by means of said first indicating means;

EXHIBIT 2 Page 13 of 15

5,430,867

**15**

holding the contents of the data processing in said holding means and stopping the data processing;

indicating resuming of the data processing by means of said second indicating means;

inputting identification data by means of inputting means after said second indicating means indicates the resuming;

collating the input identification data and prestored identification data;

resuming the data processing in accordance with a content held in the holding means, when a coincidence is detected by the collating means; and

inhibiting a resumption of data processing when non-coincidence is detected by the collating means.

**21.** A data processing system, comprising:

switch means for indicating switching on and off of a main power of said data processing system;

memory means, coupled to said switch means, for storing contents of data processing performed by said data processing system in response to an indication of switching off of the main power by said switch means;

holding means for holding identification data;

input means for inputting identification data;

discriminating means coupled to said switch means, said holding means, and said input means, said discriminating means being responsive to said switch means, for discriminating whether identification data input from said input means after said switch means indicates turning on of the main power coincides with the identification data held in said holding means;

executing means for, in response to detection of a coincidence in said discriminating means, resuming the data processing in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, to prevent contents of the data processing from being revealed to an unauthorized person, in response to detection of a non-coincidence by said discriminating means.

**22.** A data processing system, comprising:

switch means for indicating switching on and off of a main power of said data processing system;

memory means, coupled to said switch means, for storing contents of data processing performed by said data processing system in response to an indication of switching off of the main power by said switch means;

holding means for holding identification data;

input means for inputting identification data;

discriminating means coupled to said switch means, said holding means, and said input means, said discriminating means being responsive to said switch means, for discriminating whether identification data input from said input means after said switch means indicates turning on of the main power coincides with the identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, resuming the data processing in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing for security management, in response to detection of a non-coincidence by said discriminating means.

**16**

**23.** A data processing system, comprising:

switch means for indicating switching on and off of a main power of said data processing system;

memory means, coupled to said switch means, for storing contents of data processing performed by said data processing system in response to an indication of switching off of the main power by said switch means;

holding means for holding identification data;

input means for inputting identification data;

discriminating means coupled to said switch means, said holding means, and said input means, said discriminating means being responsive to said switch means, for discriminating whether identification data input from said input means after said switch means indicates turning on of the main power coincides with the identification data held in said holding means;

executing means for, in response to detection of a coincidence by said discriminating means, resuming the data processing in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, to prevent an unauthorized person from performing the data processing, in response to detection of a non-coincidence in said discriminating means.

**24.** A data processing system, comprising:

switch means for indicating switching on and off of a main power of said data processing system;

memory means, coupled to said switch means, for storing contents of data processing performed by said data processing system in response to an indication of switching off of the main power by said switch means;

holding means for holding identification data;

input means for inputting identification data;

discriminating means coupled to said switch means, said holding means, and said input means, said discriminating means being responsive to said switch means, for discriminating whether identification data input from said input means after said switch means indicates turning on of the main power coincides with the identification data held in said holding means;

executing means for, in response to detection of a coincidence in said discriminating means, resuming the data processing in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, to prevent an unauthorized person from interrupting the data processing, in response to detection of a non-coincidence in said discriminating means.

**25.** A data processing system, comprising:

switch means for indicating switching on and off of a main power of said data processing system;

memory means, coupled to said switch means, for storing contents of data processing performed by said data processing system in response to an indication of switching off of the main power by said switch means;

holding means for holding identification data;

input means for inputting identification data;

discriminating means coupled to said switch means, said holding means, and said input means, said discriminating means being responsive to said switch means, for discriminating whether identifi-

EXHIBIT 2 Page 14 of 15

5,430,867

**17**

cation data input from said input means after said switch means indicates switching on of the main power coincides with the identification data held in said holding means;

executing means for, in response to detection of a coincidence in said discriminating means, resuming

**18**

the data processing in accordance with a storage content of said memory means, and

means for inhibiting a resumption of the data processing, to prevent an unauthorized person from performing data processing on said data processing system, in response to detection of a non-coincidence in said discriminating means.

\* \* \* \* \*

EXHIBIT 2 Page 15 of 15



US006230209B1

(12) **United States Patent**            (10) **Patent No.:**     **US 6,230,209 B1**
Zenda                                     (45) **Date of Patent:**         **May 8, 2001**

(54) **MULTIMEDIA COMPUTER SYSTEM**

(75) Inventor: **Hiroki Zenda**, Hamura (JP)

(73) Assignee: **Kabushiki Kaisha Toshiba**, Kawasaki (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/472,898**

(22) Filed: **Dec. 28, 1999**

**Related U.S. Application Data**

(62) Continuation of application No. 09/106,838, filed on Jun. 30, 1998, which is a continuation of application No. 08/687, 371, filed as application No. PCT/JP96/00111 on Jan. 23, 1996, now Pat. No. 5,809,245.

(30)     **Foreign Application Priority Data**

Jan. 24, 1995  (JP) ................................................. 7-009217
Jan. 24, 1995  (JP) ................................................. 7-009220

(51) **Int. Cl.**[7] ................................................. **G06F 17/50**
(52) **U.S. Cl.** ........................ **709/247**; 709/238; 709/250; 345/112; 345/116; 345/326; 345/334
(58) **Field of Search** .................................. 709/238, 247, 709/250, 236; 345/112, 116, 125, 326, 334, 10, 11

(56)            **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,195,092 | 3/1993 | Wilson et al. ........................ 348/13 |
| 5,463,565 | 10/1995 | Cookson et al. ..................... 395/440 |
| 5,583,561 | 12/1996 | Baker et al. .......................... 348/7 |
| 5,953,485 | 9/1999 | Abecassis ............................ 386/68 |
| 5,956,039 | 9/1999 | Woods et al. ...................... 345/419 |
| 5,956,716 | 9/1999 | Kenner et al. ....................... 707/10 |

| | | | | |
|---|---|---|---|---|
| 6,064,771 | * | 5/2000 | Migdal et al. ...................... 382/232 |
| 6,067,653 | * | 5/2000 | Tsukagoshi ........................ 714/746 |
| 6,076,062 | * | 6/2000 | Van Steenbrugge ................ 704/500 |
| 6,104,861 | * | 8/2000 | Tsukagoshi ........................ 386/95 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 61-264448 | 11/1986 | (JP) . |
| 2-254570 | 10/1990 | (JP) . |
| 5-173719 | 8/1991 | (JP) . |
| 4-20083 | * 1/1992 | (JP) . |
| 4-347975 | * 12/1992 | (JP) . |
| 5-6426 | 1/1993 | (JP) . |
| 5-173719 | 7/1993 | (JP) . |
| 6-282625 | 10/1994 | (JP) . |
| 6-339117 | 12/1994 | (JP) . |
| 7-303236 | * 11/1995 | (JP) . |
| 8-23514 | * 1/1996 | (JP) . |

OTHER PUBLICATIONS

Reel Magic, SIGMA Designs,Feb. 23, 1994, pp. 20–27.

* cited by examiner

*Primary Examiner*—Thomas R. Peeso
(74) *Attorney, Agent, or Firm*—Pillsbury Winthrop LLP

(57)            **ABSTRACT**

Full-motion video data with a sub-picture and sound is recorded in a DVD-ROM drive. The DVD-ROM drive is connected to an ATAPI interface. Using a data buffer of the ATAPI interface, an MPEG stream is transferred to an MPEG2 decoder on the system board at a variable rate, and video data, audio data, and a sub-picture included in the MPEG stream are decoded by the MPEG2 decoder incorporated in the system. The decoded sub-picture is drawn in a VRAM as in normal VGA graphics. The sub-picture image drawn in the VRAM is synthesized with the video from the MPEG2 decoder by a multimedia display controller and displayed on a screen.

**15 Claims, 18 Drawing Sheets**



EXHIBIT 3 Page 1 of 28

**U.S. Patent**    May 8, 2001    Sheet 1 of 18    **US 6,230,209 B1**



F I G.   1

EXHIBIT 3 Page 2 of 28

U.S. Patent          May 8, 2001          Sheet 2 of 18          US 6,230,209 B1



F I G.  2

F I G.  4

EXHIBIT 3 Page 3 of 28



FIG. 3

EXHIBIT 3 Page 4 of 28



F I G.  5



F I G.  6

EXHIBIT 3 Page 5 of 28

Case 8:10-cv-00074-SVW-MLG   Document 1   Filed 01/19/10   Page 48 of 60   Page ID #:48



F I G. 7

EXHIBIT 3 Page 6 of 28



EXHIBIT 3 Page 7 of 28



F I G.  9

EXHIBIT 3 Page 8 of 28



F I G.   10

EXHIBIT 3 Page 9 of 28



F I G.    1 1



F I G.    1 3

EXHIBIT 3 Page 10 of 28



F I G.  1 2

EXHIBIT 3 Page 11 of 28

F I G.  1 4

EXHIBIT 3 Page 12 of 28



F I G. 15

EXHIBIT 3 Page 13 of 28

**U.S. Patent**        May 8, 2001        Sheet 13 of 18        US 6,230,209 B1



F I G.    16

EXHIBIT 3 Page 14 of 28

**U.S. Patent**          May 8, 2001          Sheet 14 of 18          US 6,230,209 B1



F I G.   17

EXHIBIT 3 Page 15 of 28

Case 8:10-cv-00074-SVW-MLG   Document 1   Filed 01/19/10   Page 58 of 60   Page ID #:58



F I G.   18

EXHIBIT 3 Page 16 of 28

FIG. 19

EXHIBIT 3 Page 17 of 28

**U.S. Patent**     May 8, 2001     Sheet 17 of 18     US 6,230,209 B1



F I G.  2 0

EXHIBIT 3 Page 18 of 28